LeBLANC, Judge.
The issues presented in this appeal from an interlocutory decree of adoption are the validity of the act of surrender executed by the child’s natural mother and determination of the child’s best interest.
FACTS
When approximately six months pregnant, Dawn Behrens visited an abortion clinic to discuss the possibility of an abortion, although she testified that she knew her pregnancy was too far advanced for an abortion. Ms. Behrens was eighteen years old, unmarried and living with her mother and stepfather at the time. Ms. Behrens was examined by Dr. Sidney Knight, who confirmed she could not have an abortion because of the advanced state of her pregnancy. Dr. Knight gave her the name and telephone number of Donald Perez, a Me-tairie attorney who could help if she wished to arrange a private adoption. Dr. Knight explained that he had an agreement with Mr. Perez to refer pregnant women who *24 were too far advanced for an abortion; in exchange for which Mr. Perez performed legal work for the physician without charge. Mr. Perez charged no fees for his assistance in placing children for private adoption. He stated that his endeavors in this regard were motivated entirely by his personal belief against abortion.
Mr. Perez stated that his first contact in this matter was with Ms. Behrens’ mother, Joan Botman. However, Ms. Behrens herself testified that she initially telephoned Mr. Perez and left a message for him to contact her. When Mr. Perez returned the call, he spoke to Ms. Behrens’ mother, who gave him directions to their home in Zachary. He subsequently visited with Ms. Beh-rens, her mother and her stepfather at their home and advised them that he could help place her child for private adoption and arrange for all of her pregnancy-related medical expenses to be paid. After he was told to proceed, Mr. Perez contacted James and Laura Pontiff, a couple which he knew wanted to adopt a child, and arranged for them to pay Ms. Behrens’ medical expenses with the hope that after the child was born, it would be surrendered to them for adoption. Thereafter, Ms. Beh-rens either sent Mr. Perez all her medical bills or telephoned him in this regard. Mr. Perez would then obtain the necessary money from the Pontiffs and forward it to her, in order to maintain the Pontiffs’ anonymity.
On November 30, 1985, Ms. Behrens gave birth to a baby girl. The child’s father was not listed on her birth certificate. On December 7, 1985, Ms. Behrens signed an act of surrender of her child for the purpose of adoption. The prospective adoptive parents, the Pontiffs, were not named in the act of surrender; Mr. Perez was named as the party to whom custody of the child was surrendered on their behalf. Mr. Perez also acted as Notary and his law partner, A. Russell Roberts, as Ms. Behrens’ attorney for purposes of the act of surrender. However, within thirty days of signing the act of surrender, Ms. Beh-rens sent a written notice of revocation of consent to Mr. Perez. The- record does not reflect that Ms. Behrens sought a return of custody at this time.
On January 30, 1986, the Pontiffs filed a petition to adopt the child surrendered by Ms. Behrens. Subsequent to receiving service of this petition, Ms. Behrens filed an answer opposing the adoption and seeking a return of custody to herself on the basis that her consent was procured through fraud, misrepresentation and duress. She also alleged that the adoption was not in the child’s best interest.
A hearing was held on April 15, 1986, on the issues of: (1) the validity of the act of surrender, and (2) the best interest of the child. After hearing all pertinent witnesses, the trial court ruled that Ms. Behrens’ consent to the act of surrender was freely and voluntarily given. The court then heard evidence as to whether the adoption was in the child’s best interest. At the conclusion of the hearing, the court took this matter under advisement. Subsequently, the trial court rendered judgment on June 20, 1986, granting an interlocutory decree of adoption in favor of the Pontiffs. Ms. Behrens has appealed this judgment.
VALIDITY OF THE ACT OF SURRENDER
Ms. Behrens alleges the invalidity of the act of surrender on two grounds: (1) that her consent to this act was induced by duress; and, (2) that she lacked effective representation of counsel as required by La.R.S. 9:422.7.
The record reflects that the only parties who exerted any pressure on Ms. Behrens to put her child up for adoption were her own mother and stepfather, Joan and George Botman. This pressure took the form of an ultimatum that she either put the baby up for adoption or else she could not continue to live with them. There is no allegation that either Mr. Perez or anyone else pressured Ms. Behrens in any way to give up her baby or were even present when the Botmans did so.
In support of her contention that her consent was not freely given, Ms. Beh-rens points to a conversation her mother *25 had with Mr. Perez on the morning that the act of surrender was executed. During this conversation, Mrs. Botman stated that Ms. Behrens did not want to give her baby up for adoption, but could not afford to raise her unless she went on welfare. While we believe this statement evidences Ms. Behrens’ naturally conflicting emotions regarding her decision to place her child for adoption, we do not believe it proves that her consent was legally vitiated. It is not at all unusual for a mother faced with this difficult decision to vacillate in making it. Nor is it unusual that an unwed mother may desire to keep her child, but nevertheless decide that it is best for all concerned to place the child for adoption.
We conclude that the pressure exerted by Mr. and Mrs. Botman did not amount to duress invalidating Ms. Behrens’ consent. While their ultimatum certainly put Ms. Behrens in a difficult situation, it appears that Ms. Behrens did not even explore the possibility of alternatives to placing the child for adoption. Although Ms. Behrens had no relatives in Louisiana other than her mother, she had a father and siblings in Indiana who could have perhaps assisted her. She apparently made no attempt to contact them for assistance. Further, while not a pleasant prospect, if she had been determined to keep her baby, she could have explored the possibility of receiving public assistance.
The present case is quite similar to In Re Adoption of Giambrone, 262 So.2d 566 (La.App. 4th Cir.1972). In Giambrone a twenty year old, unwed woman, who immediately prior to and after her child’s birth resided with her mother, consented to her child being placed for adoption. However, she later opposed the adoption of the child, alleging that her consent was given under duress because her mother would not allow her to return to her home. The court concluded with respect to this argument that:
We also do not find duress from petitioner’s allegations that her mother would not let her return to the parental home, especially in view of petitioner’s age and lack of showing that she sought any means of support for the child before or immediately after its birth ... p. 569.
In another case with similarities to the present one, Allen v. Volunteers of America, 378 So.2d 1030 (La.App. 2d Cir.1979), writ denied, 381 So.2d 509 (La.1980), a nineteen year old, unwed woman was told by her father that she could not resume living at home unless she placed her child for adoption. He also exerted other forms of pressure on his daughter. However, the court concluded that this was insufficient to constitute duress invalidating her consent.
Further, Wuertz v. Craig, 458 So.2d 1311 (La.1984), a case relied upon by Ms. Behrens in support of her position, is clearly distinguishable from the present one. In Wuertz, a nineteen year old, unwed mother was threatened by her grandmother with the possibility of criminal charges of child abuse unless she surrendered her child for adoption. These threats were made in the presence of the attorney hired by the grandmother to represent Ms. Wuertz. In fact, the attorney himself discussed the ramifications of such criminal charges with Ms. Wuertz. The record contained no evidence that such charges were justified. The supreme court found that under these circumstances Ms. Wuertz’s consent was vitiated because it was given under duress, consisting of the threat of criminal charges. It is immediately clear that the threats in Wuertz were of an entirely different nature from the pressure exerted in the present case and therefore do not support Ms. Behrens’ contention of duress.
For the above reasons, we find no manifest error in the trial court’s finding that Ms. Behrens’ consent was freely and voluntarily given.
Ms. Behrens also argues that the act of surrender is invalid because she did not have adequate representation of counsel. R.S.La. 9:422.7 provides that a “surrendering parent ... shall be represented by an attorney at the execution of the act of surrender.” In this case, Mr. Perez was accompanied at the act of surrender by his law partner, Mr. A. Russell Roberts. Mr. Perez acted as notary and Mr. Roberts *26 represented Ms. Behrens for purposes of the act of surrender. Before the execution of this act, Mr. Roberts and Ms. Behrens were left alone so that he could inform her of her rights. There is no allegation that he did not do so, or that he made any misrepresentations to her. Rather, Ms. Behrens argues that there was an inherent conflict of interest in his representation of her, because his law partner was in effect representing her mother, whose interests were adverse to her own.
In support of this argument, Ms. Beh-rens again relies on Wuertz v. Craig. In Wuertz, the supreme court found that a conflict of interest existed because Ms. Wuertz’s attorney also acted on behalf of her grandmother. Since the latter vehemently opposed her granddaughter keeping her child, her interests conflicted with those of Ms. Wuertz, who did not want to put the child up for adoption. Ms. Behrens argues that the situation in this case is the same as that present in Wuertz. We disagree.
In Wuertz, the attorney was both hired and paid by the grandmother to prepare the act of surrender and advise Ms. Wuertz of her rights. Not only was this attorney present while unfounded threats were made to Ms. Wuertz by her grandmother, but he actually participated in this unconscionable coercion by pointing out the ramifications of a charge of child abuse. In Wuertz, it was clear that Ms. Wuertz’s interests were adverse to that of her grandmother. Due to this conflict of interest, Ms. Wuertz clearly did not receive effective representation.
To the contrary, in this case there is no evidence Ms. Behrens did not receive effective representation. It was Ms. Behrens herself who was referred to Mr. Perez and it was she who initially telephoned him and left a message for him to contact her. It is true that when Mr. Perez returned the call he spoke to Ms. Behrens’ mother, who discussed the situation with him and gave him directions to their home. It is also true that, as Mr. Perez admitted, Ms. Behrens’ mother participated more often in discussions with Mr. Perez than Ms. Behrens did. Nevertheless, the situation herein is not similar to that in Wuertz. Mr. Perez was neither hired nor paid by Ms. Behrens’ mother. Ms. Behrens was not threatened or badgered either by Mr. Perez or in his presence. Further, Ms. Behrens never told Mr. Perez that she did not want to give her child up for adoption; therefore, he was not even aware that her wishes may have conflicted with those of her mother.
In any event, there could be no conflict of interest herein, because there was no attorney-client relationship between Mr. Perez and either Ms. Behrens or her mother. An attorney-client relationship is purely contractual in nature and results only from a clear and express agreement of the parties. Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350, 359 (1972); Keller v. LeBlanc, 368 So.2d 193 (La.App. 1st Cir.), writ denied, 369 So.2d 457 (La.1979). There was no evidence that such an agreement for the performance of legal services was made between the parties in question. Further, the record does not reflect that Mr. Perez at anytime acted in the capacity of an attorney on behalf of either Ms. Behrens or her mother. While Mr. Perez did act as notary on the act of surrender, it is clear that the status of a notary and that of an attorney are separate and distinct from one another. Succession of Michel, 225 So.2d 480 (La.App. 4th Cir.1969). Accordingly, since no attorney-client relationship existed between Mr. Perez and either Ms. Behrens or her mother, no conflict of interest was created by Mr. Perez’s law partner acting as Ms. Behrens’ attorney.
BEST INTEREST OF THE CHILD
Since we have concluded that the act of surrender executed by Ms. Behrens was valid, we must now determine the effect of her timely revocation of consent. La.R.S. 9:422.11 provides that a revocation of consent shall not bar a decree of adoption “if the decree is in the best interests of the child”. The trial court’s finding regarding the child’s best interests is entitled to great weight upon appellate review. Adoption of Kitler v. Kitler, 445 So.2d 202 *27 (La.App. 3d Cir.), writ denied, 447 So.2d 1069 (La.1984); In Re MDA, 427 So.2d 1334 (La.App. 2d Cir.1983). After carefully examining the evidence and the arguments of counsel, we conclude there was no error in the trial court’s conclusion that adoption by the Pontiffs’ was in the child’s best interests for the reasons given by the trial court as follows:
... The court must now conclude whether adoption by the Pontiffs is in the best interest of the child.
NATURAL MOTHER
Dawn Behrens, the natural mother, opposes the adoption. Although she exe- . cuted an Act of Surrender, she timely revoked her consent and seeks to regain custody of the child. The circumstances leading up to the Act of Surrender are part of the record in this matter. Miss Behrens, an unmarried eighteen year old, became pregnant while living in Indiana. She came to Louisiana to stay with Mr. and Mrs. George Botman, her mother and step-father ... The Botmans, believing that giving the child up for adoption was in Miss Behrens’ best interest, told her that if she did not give up the child, she could not bring the child into their home. Miss Behrens ultimately signed the Act of Surrender and consented to the adoption. Since that time, the Botmans have had a change of heart and now regret their opposition to Miss Beh-rens’ keeping the baby. They testified that they changed their minds about the adoption when they realized that Miss Behrens couldn’t get over the loss of the child. The Botmans testified that they are willing to help their daughter care for the child and that they are financially capable of doing so.
Miss Behrens is eighteen years of age and has a high school education. She lives with the Botmans in a trailer and works at a grocery store earning an hourly wage of $3.65. She is still unmarried. Because of her work, Miss Beh-rens-would have to rely on the Botmans to help care for the child. The Botmans are both employed but have different work schedules.
ADOPTIVE PARENTS
James Pontiff is thirty-one and his wife, Laura, is twenty-nine. They have been married for over ten years. Mr. Pontiff has been steadily employed by Halliburton as a diesel mechanic for ten years and earns an income of over $40,-000 annually. The Pontiffs own a four bedroom home on which they owe only $5,000. Mr. Pontiff provides more than adequate financial security for the family and impressed the court as a mature, hard working individual. Mrs. Pontiff does not work outside the home and can care for the child on a full time basis. The Pontiffs have already adopted a child who is now three years old and well adjusted.
Since December 7, 1985, the date of the Act of Surrender, the baby has been in the Pontiffs’ home. She now recognizes and responds to the Pontiffs. Because of a medical problem, the child’s respiration must be monitored at night to guard against the possibility of crib death. She sleeps in the Pontiffs’ bedroom at night attached to a respiratory monitor which sounds an alarm if respiration stops.
BEST INTERESTS OF THE CHILD
La.R.S. 9:422.11, in pertinent part, provides
Should only one parent have executed the act of surrender in accordance with the provisions of this Part, then the withdrawal of consent by that surrendering parent shall not bar a final or interlocutory decree of adoption, if the decree is in the best interests of the child.
The court’s duty, therefore, is to determine the best interests of the child. While the court is sympathetic to the desires of both parties and realizes that the devastation of the losing party in this type of case is immeasurable, this may not influence the court’s decision. Only *28 when the best interests of the child are sought can justice be served.
The court finds that Ms. Behrens, an unmarried eighteen year old, cannot offer the child the stable and financially secure family unit that the Pontiffs provide. The court is convinced that the Pontiffs are sincerely committed to providing for the welfare of the child and that they can offer the child a stable, supportive, and loving family unit. The court finds that the best interests of the child would be served by adoption of the child by Mr. and Mrs. Pontiff ...
For the reasons given above, the judgment of the trial court is affirmed. The costs of appeal are to be borne by defendant.
AFFIRMED.